# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

MARSHA DAULTON,

      Petitioner,

      vs.

MICHAEL J. ASTRUE, Commissioner of Social
Security,

      Respondent.

Case No.: 2:10-cv-00443-REB

**MEMORANDUM DECISION AND
ORDER**

Currently pending before the Court is Marsha Daulton's Motion for Summary Judgment
(Docket No. 19), seeking review of the Social Security Administration's decision to deny her
claim for disability insurance benefits and supplemental security benefits. This action is brought
pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully
advised, the court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS[1]

Marsha Daulton ("Petitioner") applied for disability insurance benefits on June 19, 2006,
alleging disability beginning September 15, 1997 (later amended to November 30, 2005).
Petitioner's claim was initially denied on October 4, 2006 and, again, on reconsideration on
March 16, 2007. On April 12, 2007, Petitioner timely filed a Request for Hearing before an

---

[1] The parties do not dispute the procedural backdrop leading up to this action before this
Court. *Compare* Pet.'s Stmt. of Material Facts, pp. 1-2 (Docket No. 20), *with* Resp.'s Brief, pp.
1-2 (Docket No. 26).

**MEMORANDUM DECISION AND ORDER - 1**

Administrative Law Judge ("ALJ").  On April 15, 2008, ALJ Lloyd E. Hartford held a hearing in

Missoula, Montana, at which time Petitioner, represented by attorney Thomas Bulman, appeared

and testified.  A medical expert, Paul J. Bach, Ph.D., and a vocational expert, Karen S. Black,

also appeared and testified during the same April 15, 2008 hearing.

On December 24, 2008, the ALJ issued a decision denying Petitioner's claims, finding

that Petitioner was not disabled within the meaning of the Social Security Act.  On February 23,

2009, Petitioner requested a review of the ALJ's December 24, 2008 decision and, on May 11,

2010, the Appeals Council denied Petitioner's request for review, making the ALJ's decision the

final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely files the instant action,

arguing that the "[d]enial of [her] claim is neither in accordance with the law nor supported by

substantial evidence."  *See* Pet.'s Compl., p. 2 (Docket No. 1).  Specifically, Petitioner asserts

that (1) the ALJ erred by giving evidentiary weight to a non-examining source; (2) the ALJ

failed to give Petitioner a full and fair hearing; (3) the ALJ erred in finding that Petitioner could

do no other work in the national economy; and (4) the ALJ failed to adequately assess the nature

and extent of Petitioner's alleged impairments.  *See* Pet.'s Brief, p. 2 (Docket No. 21).  Petitioner

requests that this Court "remand[ ] this case to the ALJ with benefits."  *See id*. at p. 10.

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence

and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981

F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42

U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's

construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. DISCUSSION

### A. Sequential Processes

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner did not engage in substantial gainful activity during the period from her alleged onset date of November 30, 2005, through her date last insured of September 30, 2006. (AR 12).

**MEMORANDUM DECISION AND ORDER - 4**

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: (1) impingement right shoulder status post rotator cuff repair; (2) impingement left shoulder with AC joint arthritis; and (3) anxiety with agoraphobia. (AR 12-13).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id*. Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. (AR 13-15).

**MEMORANDUM DECISION AND ORDER - 5**

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the residual functional capacity to perform a generally full range of (unskilled) light work, with the following limitations: (1) lift/carry 20 pounds occasionally, 10 pounds frequently; (2) stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour day; (3) sit (with normal breaks) for a total of about six hours in an eight-hour workday; (4) climb ladders, ropes, and scaffolds on only an occasional basis; (5) avoid repetitive overhead reaching; and (6) avoid concentrated exposure to extreme cold, vibration, and hazards. (AR 15-18).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. Here, the ALJ found that,

through the date last insured, Petitioner was unable to perform any past relevant work. (AR 18)
However, considering Petitioner's age, education, work experience, and residual functional
capacity, the ALJ concluded that "there were jobs that existed in significant numbers in the
national economy that [Petitioner] could have performed." (AR 18-19).

**B.      Analysis**

Petitioner challenges the denial of disability benefits in four separate ways, arguing that
the ALJ erred, first, by giving evidentiary weight to a non-examining medical source; second, by
not giving Petitioner a full and fair hearing; third, in finding that Petitioner could do other work
in the national economy; and fourth, by not adequately assessing the nature and extent of
Petitioner's impairments.

1.      Non-Examining Medical Sources vs. Single Decisionmakers

Relying exclusively upon a May 19, 2010 memorandum from Chief Administrative Law
Judge Frank A. Cristaudo, Petitioner argues that the ALJ's reliance upon Gary Rapaport, M.D.,
"is in direct opposition to the Social Security Administration's own policy and procedures." *See*
Pet.'s Brief, pp. 3-4 (Docket No. 21).[2]  The Court disagrees.

The referenced May 19, 2010 memorandum details "how ALJs . . . should evaluate RFC
assessments from State agency Single Decisionmakers ("SDM")," stating in no uncertain terms
that "agency policy requires ALJs . . . to evaluate SDM RFC assessments as adjudicatory

---

[2]  It appears that the May 19, 2010 memorandum at issue here was revised by a
September 14, 2010 memorandum by Associate Chief Administrative Law Judge John P.
Costello.  *See* Social Security Mem. from J. Costello to Regional Chief Administrative Law
Judges, dated 9/14/10.  Although the revised memorandum does not appear to substantively
change the Court's consideration relative to this discrete issue, the Court nonetheless notes that it
may take judicial review of a public agency's public records, and does so accordingly.  *See, e.g.*,
*Hein v. Capitan Grande Band of Diegueno Mission Indians*, 201 F.3d 1256, 1259 n.4 (9th Cir.
2000) (stating that court may take judicial notice of official correspondence from public agency).

documents only, and not accord them any evidentiary weight when deciding cases at the hearing level." *See* Social Security Mem. from F. Cristaudo to Regional Chief Administrative Law Judges, dated 5/19/10, attached as Ex. 1 to Pet.'s Stmt. of Material Facts (Docket No. 20). However, as Respondent correctly points out, SDMs are *not* medical professionals. *See* Resp.'s Brief, p. 7 (Docket No. 26). In contrast, Dr. Rapaport *is* a medical professional, whose October 1, 2006 "Physical Residual Functional Capacity Assessment" (AR 370-377) stands beyond the scope of the May 19, 2010 memorandum's caution against relying upon SDMs. Indeed, in her reply briefing, Petitioner notes that "Respondent's arguments regarding the opinions of Gary Rapaport, M.D., . . . are well taken." *See* Pet.'s Reply Brief, p. 2 (Docket No. 29).[3]

In short, the ALJ properly gave evidentiary weight to Dr. Rapaport and appropriately considered Dr. Rapaport's findings in addressing Petitioner's disability claim. *See, e.g.*, SSR 96-6P, 1996 WL 374180, *2 ("Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.").

2.     <u>Full and Fair Hearing</u>

An ALJ in a social security case has an independent "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Smolen v. Chater*, 80 F.3d

---

[3] Also in her reply briefing relative to the ALJ's consideration of Dr. Rapaport's findings, Petitioner argues that the medical evidence from her treating sources clearly establish covered disabilities. *See* Pet.'s Reply Brief, p. 2 (Docket No. 29). To the extent these separate and specific arguments are not addressed elsewhere within Petitioner's *original* briefing, their inclusion in *subsequent* filings will not be considered to resolve whether the ALJ should lend any evidentiary weight to the opinions of medical providers, like Dr. Rapaport – the issue raised by Petitioner at the outset. *See, e.g.*, *Reed v. Astrue*, 2009 WL 1638630, *1 (9th Cir. 2009) (unpublished) ("We also do not address any arguments raised for the first time in [Petitioner's] reply brief.") (citing *Sanchez v. Pac. Powder Co.*, 147 F.3d 1097, 1100 (9th Cir. 1998)).

**MEMORANDUM DECISION AND ORDER - 8**

1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).

"Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen*, 80 F.3d at 1288; *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998)). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150 (citing *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998); *Smolen*, 80 F.3d at 1288)).

Petitioner argues that, at the conclusion of the April 15, 2008 hearing, the ALJ agreed to conduct a supplementary hearing after receiving additional medical evidence. *See* Pet.'s Brief, p. 4 (Docket No. 21). However, after receiving the requested medical evidence, the ALJ issued his December 24, 2008 decision denying disability benefits without conducting any supplemental hearing; according to Petitioner, the ALJ's failure to conduct a supplemental hearing significantly impaired her ability to comprehensively present her case. *See id.*; *see also* Pet.'s Reply Brief, p. 2 (Docket No. 29) ("Another way of saying this is that Petitioner would have presented and argued her case differently if she would have not been lulled into a false sense of security by the ALJ at the April 15, 2008 hearing by indicating that he would conduct a supplementary hearing in the future in this matter.").

In response, Respondent obliquely speaks to the development of the administrative record vis à vis the need for a vocational expert to testify in light of Petitioner's alleged non-exertional impairments (*see* Resp.'s Brief, pp. 7-10 (Docket No. 26); *see also infra* at pp. 14-16),

but fails to actually address Petitioner's claim that she did not receive a full and fair hearing *because* there was never a supplemental hearing.

It is true that, at Petitioner's counsel's request, the ALJ agreed to hold the administrative record open to allow for the submission of additional medical reports (AR 23, 78); it is not altogether clear, however, that the ALJ was either required to conduct a supplemental hearing or indicated that he would, in fact, conduct a supplemental hearing. In this respect, during the administrative hearing, Petitioner's counsel and the ALJ stated:

ALJ: – is this, is she, do you want me to go ahead and, and issue a decision in this case after we get all the medical records? Because to be forthright and, and upfront with you, based on what I have I can't make a determination if the claimant is disabled and entitled to benefits and the reason why is this: I'm looking at the Social Security Administration's residual functional capacity part, that's the only RFC that I'm aware of that I have in the file, are you aware of any others?

ATTY: Part of the physical therapy that she's undergoing, and I didn't think of this till right now, is perhaps asking them for an opinion about what she can lift, what she can do.

ALJ: Because if I go with what's in the file on the RFC and the RFC is the Social Security Administration and when that's the only evidence there is in the file, that's what I have to go with.

ATTY: Yeah.

ALJ: It shows she can do light work with her shoulders and her hands and everything. So why couldn't she go back and do that? If I issue a decision based on today's hearing, I'd have to issue a decision she can go back and do her past work based on the residual functional capacity and the lack of medical records that shows her condition has deteriorated physically from the time she quit work in 2005. And I think that's a logical conclusion based on the record. So given that, do you want to, what do you want to do with it?

ATTY: Well Your Honor, I, I think it would be appropriate to hold the record open for a, you know, a suitable period of time, you know, to get her

|        |                                                                                                                                                                                                          |
|--------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|        | to physical therapy, have her evaluated; have the course of treatment from Dr. Cheryl, you know, undergo it's natural course; and perhaps bring that back.                                                 |
| ALJ:   | So you want to postpone the hearing for – is she under, is she scheduled to undergo physical therapy, are they going to determine whether or not physical therapy should be scheduled?                     |
| ATTY:  | Dr. Fornia is recommending it, she's going to go talk to Dr. Cheryl today –                                                                                                                               |
| ALJ    | Okay.                                                                                                                                                                                                     |
| ATTY:  | – to see if we can get a script and get it paid by work comp.                                                                                                                                             |
| ALJ:   | Okay. So that's where we're at. So then you want me to continue the hearing indefinitely into the future while this is being done?                                                                        |
| ATTY:  | I guess, 60 days?                                                                                                                                                                                         |
| ALJ:   | Okay. So let's do it this way. It being the commissioners are under a great deal of pressure from the Congress of the United States to get this backlog done, why don't, she's going to Dr. Cheryl today? |
| ATTY:  | Yes Your Honor.                                                                                                                                                                                           |
| ALJ:   | Then based on that medical record you're going to attempt to get workers comp to authorize physical therapy?                                                                                              |
| ATTY:  | Yes.                                                                                                                                                                                                      |
| ALJ:   | All right. So why don't you advise me 20 days from now what the status of the case is and keep me informed?                                                                                               |
| ATTY:  | I will do that Your Honor.                                                                                                                                                                                |
| ALJ:   | Because to be quite honest with you, I can't find you're disabled based on what's in the medical record now, there's just no way. So that's what we'll do, all right? Is that, is that fair?              |
| ATTY:  | That's fair.                                                                                                                                                                                              |
| ALJ:   | All right. And the commissioner always wants to be fair.                                                                                                                                                  |

**MEMORANDUM DECISION AND ORDER - 11**

| ATTY: | I know that Your Honor. |
| ALJ: | And as the aide of the commissioner, I do too. So, that's what we're going to do. We'll postpone the hearing, you go to Dr. Cheryl, you see what can be done and when the – |

. . . .

| ALJ: | All right. Then we'll terminate the hearing at approximately 11:30. And then Mrs. Daulton, when we get these records and stuff, counsel, then we'll probably have a supplemental hearing? |
| ATTY: | That's fine. |
| ALJ: | All right. Okay. All right. Anything else? |
| ATTY: | No Your Honor. |
| ALJ: | Okay. Well thank you then Mrs. Daulton for coming in. |
| CLMT: | Thank you. |
| ALJ: | Thank you counsel. With that then we'll conclude the hearing and go off the record. Good luck to you in the future. |
| CLMT: | Thank you. |
| ALJ: | We'll see you next time around. |

(AR 79-81, 85). Again, there is no dispute that the ALJ agreed to keep the administrative record open to allow supplementation of the record; whether that agreement also included a promise to conduct another hearing following that supplementation drives this Court's handling of Petitioner's arguments on this particular point.

Fortunately, subsequent correspondence between the ALJ and Petitioner's counsel help bring into focus the parties' respective understandings moving forward:

- On June 4, 2008, Petitioner's counsel wrote to the ALJ, indicating that he had forwarded along medical records for April and May of 2008, but that they do not document Petitioner's long-term prognosis regarding her condition. (AR

**MEMORANDUM DECISION AND ORDER - 12**

230). Petitioner's counsel then requested the ALJ to "hold the record open" to July 18, 2008 to allow for additional supplementation. *Id.*

- On July 17, 2008, Petitioner's counsel wrote to the ALJ, indicating that he recently sent more medical records showing that Petitioner is still receiving medical treatment. (AR 231). Petitioner's counsel then requested another 30-day extension of time "in which to monitor this situation and provide [the ALJ] with updated medical evidence, if any, and provide [the ALJ] with a status report at that time." *Id.*

- On August 18, 2008, Petitioner's counsel wrote to the ALJ, notifying the ALJ that Petitioner underwent a procedure on one shoulder and that she was slated for rotator cuff surgery on the other in September. (AR 232). Petitioner's counsel requested "the opportunity to gather these records and add them to the file before [the ALJ] make[s] a final decision in this matter." *Id.* Petitioner's counsel then requested an extension of time until October 17, 2008 to accomplish this supplementation. *Id.*

- On August 26, 2008, the ALJ granted Petitioner's counsel's request for an extension to submit additional evidence by October 18, 2008, stating that, if no additional evidence is submitted, he "will issue a decision without it." (AR 233).

- On October 17, 2008, Petitioner's counsel wrote to the ALJ, confirming the October 17, 2008 deadline "whereupon [the ALJ] will close the record and render [his] decision in this matter." (AR 234). Although it does not appear that additional records were actually provided at this time, the October 17, 2008 letter served "as additional information [for the ALJ] to consider in reaching [his] decision." *Id.*

The ALJ finally rendered his decision on December 24, 2008, without reopening the hearing. (AR 10-19) ("Following the hearing, the claimant's representative made several requests to leave the record open to provide more information, and such requests were granted by the undersigned. Ultimately, the claimant's representative was permitted to provide new material through October 18, 2008, over six months after the hearing was held."). After reviewing the dialogue between Petitioner's counsel and the ALJ at the administrative hearing, coupled with the correspondence between the two over the course of the next six months, the

**MEMORANDUM DECISION AND ORDER - 13**

Court cannot agree with Petitioner that the ALJ "clearly promised" a second hearing. Instead, in the Court's mind, during the hearing (and later confirmed – or at least not called into question – by the parties' correspondence), the ALJ appropriately agreed to keep the record open (from, originally, 20 days to, ultimately, six months) with the *possibility* of another hearing in the event the records warranted as much. The fact that the ALJ did not actually participate in another hearing, under the circumstances presented in the existing record, do not require reversal and/or remand here. To be sure, the ALJ in this instance worked with counsel over an extended period of time to ensure an opportunity to thoroughly evaluate the evidence. The ALJ's duty (met in part by his laudable effort to advise Petitioner's counsel of the potential problems with the disability claim in agreeing to leave the record open for an extended period) was therefore satisfied.

      3.       <u>Vocational Experts at Step Five of the Sequential Process</u>

The parties do not dispute that, at step five of the sequential process, there are two separate ways to meet the burden of showing that there is other work in "significant numbers" in the national economy that a claimant can perform: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines (the "grids"). *See Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). However, the use of the grids is only appropriate if a claimant's non-exertional limitations do not significantly limit the range of work permitted by that claimant's exertional limitations. *See id*. at 1102 ("'A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a case, the guidelines would be inapplicable.'") (quoting *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 577 (Pregerson, J., concurring) (9th Cir. 1988)).

**MEMORANDUM DECISION AND ORDER - 14**

Here, the ALJ did not call a vocational expert to establish the availability of suitable jobs in the national economy, inherently concluding that Petitioner's limitations were adequately covered by the grids. (AR 18-19). Petitioner argues that "it was err for the ALJ to use the grids because she suffered from non-exertional impairments" – identified by Petitioner here as anxiety with agoraphobia. *See* Pet.'s Brief, pp. 6-7 (Docket No. 21).

Yet, the mere *allegation* of a non-exertional impairment – or, even, an actual *finding* of a "severe" non-exertional impairment at step two of the sequential process – will not warrant the use of a vocational expert to the exclusion of the grids at step five of the sequential process. *See Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) ("Therefore, we hold that satisfaction of the step-two threshold requirement that a claimant prove her limitations are severe is not dispositive of the step-five determination of whether the non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert."). Rather, a vocational expert's testimony is required *only* when there are significant and "sufficiently severe" non-exertional limitations not accounted for in the grid – said another way, if an ALJ finds a claimant's non-exertional limitations (regardless of severity at step two of the sequential process) do not significantly affect her exertional capabilities, the ALJ may use the grids in lieu of calling a vocational expert. *See Bates v. Sullivan*, 894 F.2d 1059, 1063 (9th Cir. 1990) (overruled on other grounds).

With these standards in mind, the Court finds that the ALJ did not err at step five of the sequential process. First, the ALJ had substantial evidence in the form of the medical records indicating Petitioner could perform light, unskilled work. (AR 15-18). Second, finding support in Patricia Webber, M.D.'s, September 7, 2006 Mental Status Evaluation, the ALJ found

Petitioner's capacity for such work was not significantly diminished by her mental impairment of anxiety with agoraphobia. (AR 14, 347) ("She would be expected to grasp the main idea from conversations and oral directions. She demonstrated the ability to follow short, concrete verbal instructions. In general, measures of attention/concentration and mental control are within normal limits. Speech, hearing, and language are intact. Basic social skills are intact.").

These findings combine to align with the ALJ's view that Petitioner's non-exertional limitations do not significantly affect her exertional capabilities to perform light, unskilled work. Therefore, the ALJ correctly used the grids to find that Petitioner was not disabled and, instead, could perform jobs that exist in sufficient numbers in the national economy.

4. <u>Nature and Extent of Petitioner's Alleged Impairments</u>

Petitioner finally argues that the ALJ failed to adequately assess the nature and extent of her shoulder impairments, along with the effect of prescribed medication on her ability to work. *See* Pet.'s Brief, pp. 7-9 (Docket No. 21).

*1. Shoulder Impairments*

Focusing upon the January and June 2006 treatment notes from Kenneth V. Carpenter, M.D., Petitioner asserts that "[t]his medical evidence was not given greater weight or consideration by the ALJ . . . ." *See id.* at 7-8. To the extent Petitioner contends that such evidence somehow proves her disability, the undersigned disagrees.

First, nearly a month before her visit with Dr. Carpenter, on December 19, 2005, Petitioner saw Rebecca Anderson, M.D., complaining of bilateral shoulder pain. (AR 299). At that time, Dr. Anderson noted "full range of motion" and "no dramatic weakness" concerning Petitioner's right shoulder. *Id.* Further, according to Dr. Anderson, following injections to both

shoulders, Petitioner's symptoms improved, "especially in the left shoulder almost immediately." *Id*. Petitioner's shoulder issues apparently persisted as she then saw Dr. Carpenter on January 30, 2006 for left and right shoulder pain. (AR 333-334). At that time, Dr. Carpenter referred her to physical therapy, noting that Petitioner will call with a progress report in 3-4 weeks." (AR 333). Petitioner's next visit to Dr. Carpenter was on June 26, 2006 – almost five months later. (AR 332). By then, Petitioner had stopped attending physical therapy, even though she felt her symptoms were improving after going to several sessions. (AR 332). As Respondent points out, failure to pursue appropriate treatment, may contribute to an ALJ's belief that a claimant's pain allegations of pain are not so debilitating as to prevent her from working. *See* Resp.'s Brief, p. 11 (Docket No. 26) (citing *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989)).[4]

Second, the ALJ's findings align with those of Dr. Rapaport and his Physical Residual Functional Capacity Assessment. (AR 370-377). There, Dr. Rapaport indicated that Petitioner could occasionally lift 20 pounds;[5] could stand and/or walk six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; had only occasional limitations as to climbing ladders, ropes, and scaffolds; and had unlimited manipulative limitations, except that she should avoid repetitive overhead reaching. (AR 371-373).

Third, notwithstanding Petitioner's testimony to the contrary, the ALJ highlighted the fact that "the record contains references to activities which are not limited to the extent one

---

[4] Petitioner also states that her 2008 surgeries establish the severity of her shoulder injuries as of 2006. *See* Pet.'s Brief, pp. 8-9 (Docket No. 21). However, as Respondent counters, "this fact does not establish her impairments were disabling two years earlier." *See* Resp.'s Brief, p. 12 (Docket No. 26). Without more, these after-the-fact surgeries cannot operate to definitively demonstrate the existence of a covered disability two years prior.

[5] Dr. Rapaport also indicated that Petitioner could frequently lift 50 pounds or more, but the ALJ found these to be nonsensical and were given no weight. (AR 17).

**MEMORANDUM DECISION AND ORDER - 17**

would expect given the complaints of disabling symptoms and limitations. (AR 16). For example, despite Petitioner's alleged pain, the ALJ noted that she (1) was able to travel to Seattle in August 2006 to care for her ailing sister (AR 389); (2) indicated to Dr. Webber that she is capable of caring for her plants, watching television, visiting with family and friends, and going through her artificial flowers (AR 351); (3) has very few problems with personal care, can prepare her own meals, can drive a car, can pay bills, can handle a checking account, and can lift up to 20 pounds, according to her husband (AR 194-202). The ALJ appropriately incorporated these realities when he questioned Petitioner's physical capabilities.

With all this in mind, there is no question that Petitioner suffers from several impairments (acknowledged as "severe" by the ALJ (*see supra* at p. 5)) that no doubt impact her ability to work. However, at this point, it is not this Court's duty to resolve the conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations. Rather, this Court is only to review whether the ALJ's decision in determining that Petitioner is not disabled is supported by the record. With this backdrop, given the potentially conflicting medical opinions, the ALJ need only offer specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Petitioner's claim. Although the ALJ's decision is potentially at odds with another's interpretation of the same record, the evidence can reasonably support the ALJ's conclusions. As a result, this Court will not substitute its judgment for that of the ALJ's. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

### 2. *Medications*

The ALJ must consider all factors that might have a "significant impact on an individual's ability to work," including the side-effects from medications. *Erickson v. Shalala*, 9

F.3d 813, 818 (9th Cir. 1993); *see also* 20 C.F.R. § 404.1529(c)(3)(iv). Petitioner generally argues that the ALJ additionally failed in this respect. *See* Pet.'s Brief, p. 9 (Docket No. 21) ("The ALJ did not adequately consider the side effects of Petitioner's medication upon her mental ability to work. Clearly, these strong medications would have an adverse impact on the Petitioner's ability to function mentally and should have been examined more thoroughly by the ALJ in his decision. Especially in light of the fact that she suffered from a mental impairment which adversely affected her abilities to focus and concentrate."). However, in doing so, Petitioner offers no actual evidence of her own that her medication adversely contributed to her inability to work.

Absent any evidence suggesting that Petitioner's medication negatively impacted her ability to work, the Court will not engage in the practice of separately combing through the medical record to find such support. *See, e.g.*, *Short v. Astrue*, 648 F. Supp. 2d 1185, 1191 (C.D. Cal. 2009) ("Where there is no evidence other than the claimant's testimony about side effects, the ALJ's failure to address them is not error."). Regardless, the prescriptions Petitioner indicates the ALJ should have considered in his decision – Clonazepam, Lorazepam, and Vicodin – were all prescribed *before* Petitioner's November 30, 2005 onset date. (AR 226). Petitioner's arguments in this respect are therefore without merit.

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

The evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation. Accordingly, the ALJ's decision as to Petitioner's alleged disability is based on proper legal standards and supported by substantial evidence. Therefore, I conclude that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

## V. ORDER

Based on the foregoing, Petitioner's Motion for Summary Judgment (Docket No. 19) is DENIED, the decision of the Commissioner is AFFIRMED, and this action is DISMISSED in its entirety, with prejudice.

DATED: **September 28, 2011**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge